318

# CIRCUIT COURT OF FAIRFAX COUNTY

Michael Verry

v.

Stan G. Barry,
Sheriff, et al.

July 27, 2006

Case No. (Law) 2005-7454

BY JUDGE KATHLEEN H. MACKAY

This matter came before the Court on Defendant Barry's Demurrer and Plea in Bar. These motions were heard on Friday, April 28, 2006. At that time, I took the Defendant's Demurrer and Plea in Bar under advisement and requested that the parties provide supplemental briefs as to the issues. Since the hearing date, I have had the opportunity to review all of these briefs in light of oral arguments made, and I am now prepared to rule.

## Background

On November 30, 2006, Plaintiff Michael Verry was arrested for a DUI and transported to the Mount Vernon Police Substation where he claims he was assaulted and battered by various police officers. Verry has sued Kenyatta Momon and Jonathan Bobel, his arresting police officers; the Fairfax County Police Department; Sheriff Barry, the Sheriff of Fairfax County; two John Does, the officers who allegedly beat him at the police substation; and Fairfax County.[1]

---

[1] Judge Wooldridge overruled Defendants Momon and Bobel's Demurrer to the Amended Complaint on June 2, 2006. With regard to the original Motion for Judgment, Judge Ney denied the Police Department's plea in bar and sustained its demurrer based upon similar arguments. Judge Bellows also sustained the County's plea in bar as to sovereign immunity.

He alleges he suffered broken ribs and other damages arising from this assault.

In particular, in Counts IV and V of the Amended Complaint, Verry alleges that Sheriff Barry is liable for the actions of his deputies, constituting assault and battery (Count IV) and gross negligence (Count V).

In his Demurrer and Plea in Bar, Sheriff Barry argues that he is protected by the doctrine of sovereign immunity and that the Plaintiff's Amended Complaint fails to state a claim of gross negligence. Plaintiff counters, stating that Sheriff Barry is not protected by absolute sovereign immunity, but rather a limited qualified immunity which has been waived by Sheriff Barry's actions.

*Analysis*

*Sovereign Immunity*

The issue of a sheriff's liability has been addressed by the Virginia Courts in a variety of cases dating back to 1800 when it was held that the sheriff shall answer civilly for all the acts of his deputy. *James v. M'Cubbin*, 6 Va. (2 Call) 273 (1800). This rule was echoed in the 1808 case *Moore's Adm'r v. Dawney, Adm'r*. In *Moore* it was held that "the law looks upon the sheriff and his officers as one person: he is to look to his officers that they do their duty; for if they transgress, he is answerable to the party injured by such transgression; and his officers are answerable over to him." *Moore's Adm'r v. Dawney, Adm'r of Bell*, 13 Va. (3 Hen. & M.) 127, 132 (1808). Thus, a sheriff may be held responsible for the acts of his deputies.

As an individual, a sheriff is a "constitutional officer" by virtue of Article VII, § 4, of the Constitution of Virginia. As a constitutional officer, a sheriff is not an officer or employee of a county. *Hilton v. Amburgey*, 198 Va. 727, 729, 96 S.E.2d 151 (1957). His duties are regulated and defined by statute. *Id.* Thus, a sheriff's sovereign immunity is distinct from that afforded a county officer or employee.

I would agree with counsel that the application of the doctrine of sovereign immunity in the case law of the Commonwealth has been confusing. Examples of the application of the doctrine to a sheriff are scarce. The court in *Heider v. Clemons* concerned acts of negligence committed by a sheriff's deputy in serving process. *Heider v. Clemons*, 241 Va. 143, 145, 400 S.E.2d 190 (1991). To analyze the facts, the Supreme Court applied a four part test which was originally enumerated in *James v. Jane*, 221 Va. 43, 53, 282 S.E.2d 864 (1980).

These four factors are (1) the nature of the function performed; (2) the extent of the state's interest and involvement in the function; (3) the degree of control exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion. *Id; Messina v. Burden*, 228 Va. 301, 313, 321 S.E.2d 657 (1984). Examples of how the *James* factors are applied can be found in these other cases: *Colby v. Boyden*, 241 Va. 125, 128-29, 400 S.E.2d 184 (1991) (regarding immunity of police officer); *Meagher v. Johnson*, 239 Va. 380, 389 S.E.2d 310 (1990) (regarding immunity of police officer); and *Banks v. Sellers*, 224 Va. 168, 173, 294 S.E.2d 862 (1982) (regarding immunity of Division Superintendent and high school principal).

However, the *James* court also noted that, by necessity, certain state officials and state employees must enjoy immunity in the performance of their duties. *James* at 53. This applies to those employees who are required by the Constitution and by general law to "exercise broad discretionary powers, often involving both the determination and implementation of state policy." *Id*.

A sheriff's duties are outlined in Va. Code §§ 53.1-116 through 53.1-127.1. These duties include keeping records of prisoners received in the jail; reporting to the Department of Corrections; purchasing food, clothing, and medicine for jail prisoners; and acting as the "keeper" of the jail. *See* Va. Code §§ 53.1-116, 53.1-116.1, 53.1-116.2, and 53.1-126. It appears to me that Sheriff Barry's decisions as to how to operate and maintain his jail are purely discretionary. Va. Code § 53.1-116.2 grants sheriffs authority to be the "keepers of jails." Thus, although the state has a strong interest in making sure the jail is properly operated, the day to day decisions, including the hiring of employees and how to maintain a safe and secure jail, rest in the discretion of the sheriff. *See Small v. Jackson*, 4 Va. Cir. 262, 265 (Richmond, 1985) stating "Certainly hiring or employing deputies for jail operations is a discretionary function."

The Court in *James* was also instructive in definitely stating that "A state employee who acts wantonly, or in a culpable or grossly negligent manner, is not protected. And neither is the employee who acts beyond the scope of his employment, who exceeds his authority and discretion, and who acts individually." *James* at 53; *Hedrick v. Roberts*, 183 F. Supp. 2d 814, 824 (E.D. Va. 2001). I conclude that the *James* decision sets out the two ways of analyzing the sheriff's actions, his discretionary activities, and the activities of his deputies that may be wanton or exceed the scope of their employment. These two separate actions are reflected in Plaintiff's Count IV and V.

*Count* IV: *Sheriff's Assault and Battery*

In Count IV, Plaintiff alleges Sheriff Barry, by and through his deputies, "assaulted and battered the Plaintiff when they laid hands upon his person, kicked him, and punched him repeatedly." Amended Complaint ¶ 43.

Assault and battery could be construed as an intentional tort, or the type of wanton conduct that would describe gross negligence. "Gross negligence" is that degree of negligence which shows such indifference to others as constitutes an utter disregard of caution amounting to a complete neglect of the safety of another person or another person's property. It is such negligence as would shock fair-minded people, although it is something less than willful recklessness. *Ferguson v. Ferguson*, 212 Va. 86, 92, 181 S.E.2d 648 (1971); *see also Chapman v. City of Virginia Beach*, 252 Va. 186, 190, 475 S.E.2d 798 (1996), stating "gross negligence has been described as the `utter disregard of prudence amounting to complete neglect for the safety of another.' `It is a heedless and palpable violation of legal duty respecting the rights of others' which amounts to the `absence of slight diligence, or the want of even scant care'," quoting *Frazier v. City of Norfolk*, 234 Va. 388, 393, 362 S.E.2d 688 (1987), and *Town of Big Stone Gap v. Johnson*, 184 Va. 375, 378, 35 S.E.2d 71 (1945).

The determination of gross negligence is an issue of fact properly decided by a jury. *See Koppel v. Morgan*, 41 Va. Cir. 130, 132 (Fairfax 1996), *citing Chapman* at 190-91. Therefore, Sheriff Barry's demurrer as to Count IV is overruled.

Sheriff Barry points to the more recent case of *Niese v. City of Alexandria* that extends the protections of sovereign immunity to a city or municipality when the employee at issue was performing a "governmental function," even when an intentional tort is alleged. *Niese v. City of Alexandria*, 264 Va. 230, 239, 564 S.E.2d 127 (2002).

*Niese* is the last in a line of decisions that reflects a different analytical approach for a different form of sovereign immunity. In *Niese*, the court analyzed the immunity of a local municipality. In the case at hand, I have been asked to analyze the sovereign immunity protections afforded to a sheriff and his deputies. In the former situation, sovereign immunity turns on whether the alleged actions were "proprietary" or "governmental." *Id.* at 238-39. In the latter, sovereign immunity is determined by applying the four-part *James* test. Therefore, because we must apply different analytical tests in these differing contexts, the extension of sovereign immunity protection to a local municipality by *Niese* has no real effect on our analysis of a Constitutional officer, such as Sheriff Barry.

## Count V: Gross Negligence

It is well settled that the doctrine of sovereign immunity will not extend protection to acts beyond simple negligence. *See Koppel v. Morgan,* 41 Va. Cir. 130, 132 (Fairfax 1996). Thus, individuals may be liable for actions found to be grossly negligent. Sheriff Barry demurs to Count V of the Amended Complaint, arguing that Plaintiff has failed to allege facts to support this claim of gross negligence.

At the outset, it is important to note that, as pleaded, there is no connection alleged between the Plaintiff's assertions as to training, testing, and supervision that actually connect training, testing, and supervision with these particular deputies or to the particular facts at hand. For instance, there is no allegation that these officers were psychopaths that should have been identified if proper tests were administered. Rather the allegations are general and conclusory. Indeed, the Amended Complaint refers to the Sheriff's duty to the "public at large" as well as to Plaintiff. *See* Amended Complaint ¶ 51.

Justice Annunziata dealt with a similar set of facts when sitting as a judge in this court in 1991. *See Sickles v. Peed,* 25 Va. Cir. 487 (Fairfax, 1991). In evaluating the Plaintiff's allegations that the Sheriff failed to properly discipline his deputies, failed to properly investigate alleged incidents, allowed the deputies to place criminal charges against inmates, and failed to perform ongoing psychological testing, she concluded that the Sheriff exercises a strong degree of control over the deputies and the manner in which they handle prisoners. *Id.* at 489. The Sheriff's failure to properly hire, train, and discipline deputies was found to be a matter of judgment and discretion such that the Sheriff was entitled to immunity. *Id.* In granting the Sheriff immunity she impliedly concluded that the alleged actions were also insufficient to support a finding of gross negligence. I believe Justice Annunziata's reasoning to be correct and, though not binding as precedent in this case, I will follow its analysis.

Therefore, Defendant Barry's demurrer is sustained as to Count V because Plaintiff has failed to allege facts to support his claim for gross negligence.

## Conclusion

Defendant has filed a plea in bar asserting sovereign immunity in response to Count IV and Count V and a demurrer as to all factual allegations contained in Counts IV and V. *See* Defendant's Plea in Bar and Demurrer to

Amended Complaint, filed March 3, 2006. The Court is sustaining the demurrer and plea in bar as to Count V because the Count merely describes the discretionary responsibilities of the Sheriff. The Court is sustaining the demurrer and plea in bar as to Count V without leave to amend since it appears the Plaintiff was already given an opportunity to amend the complaint by Judge Williams. The factual allegations as stated in Count IV, I believe, survive demurrer.