## CIRCUIT COURT OF FAIRFAX COUNTY

McKeever Associates

    v.

Giuseppe et al.

Case No. (Chancery) 127234

McKeever Associates

    v.

S. Hollen

Case No. (Chancery) 127238

December 3, 1992

BY JUDGE GERALD BRUCE LEE

This matter comes before the Court on Defendant's Demurrer to the Bill of Complaint. The Defendant argues that the Complainants had one contract with the Defendant and that the contract is unenforceable as a covenant not to compete. Complainants counter that the Bill of Complaint alleges several agreements requiring Defendant not to reveal trade secrets and client lists.

Having considered the arguments and memoranda of counsel and for the reasons below, the Court finds that the Bill of Complaint relies upon several contracts and that they form a reasonable restraint upon Defendant. The Court, therefore, overrules the demurrer.

### Facts

This case is a suit in chancery seeking injunctive relief and damages. Prior to this litigation, the Defendant was employed by Com-

plainants, McKeever Associates, Inc., and its subsidiary Metropolitan Associated Permit Services, Inc. (MAPS), to process and pull permits for their clients. MAPS is in the business of, among other things, acquiring permits from local and state governments and providing consulting services to contractors in the Washington Metropolitan Area. As part of his employment, Giuseppe agreed not to solicit Complainants' clients or reveal their identity. Giuseppe further agreed not to divulge proprietary and confidential information, including client lists.

Giuseppe tendered his resignation and obtained employment from the corporate Defendant, Rapid Permit Service of Landover, Maryland. Complainants contend that Giuseppe has violated his agreement with them by distributing literature soliciting their clients and by engaging in a campaign to misrepresent the Complainants' position in the marketplace.

Complainants have filed a bill of complaint seeking injunctive relief and damages. Giuseppe demurs:

> Exhibit A to the complaint, which is the only document upon which liability is based is insufficient as a matter of law to support the claims of the Complainant nor does it constitute a promise not to compete.

Demurrer (September 30, 1992).

### Discussion

Defendant's demurrer is overruled because the Complaint is based upon three contracts and the covenants alleged to prevent divulgence of trade secrets are reasonable restraints upon Defendant Giuseppe.

All of the facts appearing in the Bill of Complaint must be accepted as being true for demurrer purposes. *Flippo v. F & L Land Co.*, 241 Va. 400 (1991); *Duggin v. Adams*, 234 Va. 221 (1987). Even if the Court should agree with some matters set forth in the demurrer, a demurrer must be overruled if it is pleaded to the whole bill and any part is good. Bryson, *Handbook on Virginia Civil Procedure*, 227 (2d ed. 1989).

The Defendant contends that Exhibit A to the Bill of Complaint is the only document upon which liability is based and that it is insufficient to grant injunctive relief and damages. Defendant is incorrect.

The Bill of Complaint mentions three "agreements": an employment agreement (Complaint at para. 5 & Exhibit A); a confidentiality agreement (Complaint at para. 6); and an employee manual (Com-

plaint at para. 10). Each of these agreements contained provisions relating to trade secrets and covenants. First, the confidentiality agreement provided that Defendant should "keep confidential Plaintiff's proprietary information and trade secrets." Complaint at para. 6. Second, the employment agreement provided that "upon termination of his employment, [Giuseppe] would not, for a period of three years after the termination, solicit Plaintiff's clients, reveal to anyone who Plaintiff's clients are or reveal any aspect of their business relationship with those clients." Complaint at para. 7. Third, the employee manual "set forth information which Plaintiffs considered proprietary and trade secrets." Complaint at para. 9. Accordingly, the Complaint does not rely exclusively upon Exhibit A and the demurrer must be overruled if any of the agreements are sufficient grounds to grant the relief sought.

Further, Defendant contends that the law does not grant relief under the circumstances of this case. Defendant cites *Community Counselling Serv., Inc. v. Reilly*, 317 F.2d 239 (4th Cir. 1963), paraphrasing the case as stating, "Where there is no suggestion that the employer had any trade secrets which ought not to be utilized by the employee in competing with it and there is no covenant not to compete, the employee has a clear and unrestricted right to compete after his resignation." Defendant's Memorandum at page 1. However, since it is evident from the pleadings that the complaining employers did have an agreement not to compete and did have trade secrets, *Community Counselling Serv., Inc.* in inapposite. The Fourth Circuit explicitly stated in that case that it did not involve trade secrets or a covenant not to compete. *Id.* at 244.

Finally, Defendant relies upon *Stoneman v. Wilson*, 169 Va. 239, 243–44 (1937), in which the Virginia Supreme Court held the defendant did not violate a covenant when he sold his share in a hardware store and then became a clerk in a competitor's hardware store.

The common law rule is that a contract restraining competition will be upheld if it is reasonable and not injurious to the public. *Id.* at 245. The *Stoneman* court distinguished between two classes of covenants not to compete. First, the Court held that employees, especially those who come into contact with their employer's customers, often enter into restraining contracts preventing them from engaging in employment with competing businesses. Such restraining covenants are typically upheld. *Id.* at 246.

However, in *Stoneman*, defendant did not sign such a contract. *Id.* at 244, 246. Instead, his contract provided that he should not "go

into the hardware business." *Id.* at 243. Accordingly, the court applied a more stringent standard for those who fell into the vague second class of covenants prohibiting "business":

> [I]nquiry must be as to the effect of [the] employment upon the business sought to be protected; and this effect will depend in part upon the nature of the business, and in part upon the participation of the employee in its control. The test . . . is whether . . . [the] scope and character [of] employment is such as to result in all likelihood in substantial interference with the business which was the subject of the contract.

*Id.* at 247 (internal quotes omitted).

In this instance, the contracts provided that Giuseppe agreed that certain information constituted trade secrets and that he may not either solicit or reveal to others MAPS' clients or any aspect of the business relationship. Consequently, this case is distinguishable from *Stoneman.* Here the contracts do not prevent the Defendant from entering another business, even a competing one. Rather, contracts are narrowly drawn, protecting information about clients. These contracts fall within the first class of contracts as set forth in *Stoneman.* They are reasonable restraints. Moreover, it is clear that Giuseppe's activities fall within the concern of the first class, wooing clients. Upon Giuseppe's employment with Rapid Permit, it is alleged that he used information obtained from MAPS to divert and interfere with MAPS' clientele. Rapid has also distributed materials to MAPS' clientele announcing Giuseppe's association with Rapid Permit. Consequently, the demurrer is overruled.

### McKeever Associates v. Hollen

The Court finds that the reasoning in *McKeever Associates v. Giuseppe,* In Chancery No. 127234, is directly applicable to the accompanying case of *McKeever Associates v. Hollen,* In Chancery No. 127238, and accordingly the Court overrules the demurrers in that case as well for the reasons stated in this letter opinion.

An additional matter demurred to in the *Hollen* case is addressed now. Defendant Sam Hollen asserted that McKeever Associates improperly served process upon him, and he says that he specially appears and demurs based upon this improper service. First, the Court notes that the correct method to object to improper service of process is by motion to quash process. Va. Code Ann. § 8.01–277 (Repl. Vol.

1992). Second, Virginia has a curative statute with regard to service of process, and if process reaches the person to whom it is directed within the prescribed time, it is deemed properly served. Va. Code § 8.01–288. Hollen appears in this case. It is clear that he has received service of process. Therefore, Hollen's demurrer as to improper service of process is overruled.