## CIRCUIT COURT OF FAIRFAX COUNTY

Cardenuto

    v.

Dominion Bank
of Northern Virginia, N.A.

January 25, 1991

Case No. (Law) 98810

By JUDGE THOMAS J. MIDDLETON

This matter came to be heard upon the demurrers of defendant Dominion Bank of Northern Virginia, N.A. (the Bank). After consideration of the arguments of counsel, the submitted memoranda, and the applicable statutory and case law, the demurrers are overruled.

The Bank demurs to Count I of the Amended Motion for Judgment. Count I alleges that the bank was negligent in its handling of the check and such negligence has caused loss to the plaintiffs. Upon consideration of the applicable law, the demurrer is overruled.

The bank argues that the provisions of the U.C.C. as codified in Virginia have displaced a common law negligence action sounding in tort against a bank for dishonor. Virginia Code § 8.1-103 provides, in pertinent part, "[u]nless displaced by the particular provisions of this act, the principles of law and equity . . . shall supplement its provisions." Hence, unless the Bank can show that a cause of action for negligence upon the facts alleged has been displaced by particular provisions of the act, the demurrer must be overruled.

The Bank cites Virginia Code § 8.4-402, which provides that a bank will be liable to its customer for the wrongful

dishonor of an item. A "customer" of a bank is "any person having an account with a bank or for whom a bank has agreed to collect items and includes a bank carrying an account with another bank." Virginia Code § 8.4-104(e).

The Bank further cites Virginia Code § 8.3-401(1) which mandates that "[n]o person is liable *on an instrument* unless his signature appears thereon." (emphasis added), and Virginia Code § 8.3-409(1) which provides "[a] check or other draft does not of itself operate as an assignment of any funds in the hands of the drawer available for its payment, and the drawer is not liable on the instrument until he accepts it," the predecessor of which was the basis for the decision in *Reaves Warehouse Corp. v. Easley*, 150 Va. 236 (1928). The Court is also aware of the U.C.C. provision giving the holder of an instrument an immediate right of recourse against the drawers and indorsers. Virginia Code § 8.3-507(2).

From a review of the above Code provisions and the cases cited by the defendant, it is clear that the holder of a check has no contractual theory of recovery for wrongful dishonor against a bank on the *instrument itself*, but instead must look to the drawers and indorsers.

The determinative question in ruling on this demurrer, however, is whether the legislature, by adopting the provisions of the U.C.C., intended to displace the common law theory of negligence and allow a bank to be shielded from liability for its own failure to exercise ordinary care. The Court has determined that such intention cannot be found in the statutes; rather the Code, in Title 8.4, implicitly recognizes a duty of ordinary care owed by the bank to the *owner* of a negotiable instrument.

The most compelling argument made by the Bank in support of its contention that a negligence theory is not available to the plaintiffs is the provision in Virginia Code § 8.3-507(2) for an immediate right of recourse by the holder against the drawers and indorsers for wrongful dishonor. Were this a cause of action for wrongful dishonor, the demurrer would be sustained. Count I of the Amended Motion for Judgment, instead, charges common law negligence, resulting in dishonor and damages.

The Court has reviewed the cases cited by the defendant which effectively allow banks to dishonor checks with impunity without having to answer to anyone except their

immediate customer. It does not appear that any of these cases hold precisely that there is not a cause of action in negligence available to a holder against a payor bank. Some of the cases resolve issues of tort liability upon a review of the facts, rather than summarily. In any event, this Court holds that it is both consistent with the U.C.C., and just, to require a bank to be liable to the owner of an item when the bank fails to use ordinary care.

As previously noted, to prevail on this demurrer, the Bank needed to show that the common law negligence cause of action was displaced by particular provisions of the Code. Such has not been shown to the satisfaction of this Court. Rather, the U.C.C. provides a duty of ordinary care for a bank under the facts of this case and an accompanying remedy for breach of that duty.

Virginia statutory law provides that the provisions of title 8.4 can be varied by agreement except that "no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care . . . ." Virginia Code § 8.4-103(1). It is clear at least that a bank owes a duty of ordinary care to someone, the more difficult question is to whom does this duty run? Virginia Code § 8.4-103 is entitled "Variation by agreement; measure of damages; certain actions constituting ordinary care" and therefore addresses, at least in part, a contractual relationship between a bank and its customer. Fortunately, however, the drafters of the Code anticipated some ambiguity when interpreting its provisions and included an Official Comment following each section to further aid the reader's understanding.

The Official Comments to the U.C.C. are certainly not binding on the Court, but they do represent powerful dicta which should not be heedlessly ignored. *In re Varney Wood Products, Inc.*, 458 F.2d 435 (4th Cir. 1972). Virginia Code § 8.4-103(5) provides that the recovery for "failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care . . ." and includes consequential damages only where bad faith is shown. An "item" is "any instrument for the payment of money even though it is not negotiable but does not include money." Virginia Code § 8.4-103 provides that banks come under the general obligation to exercise "ordinary care,"

which term is not defined in the U.C.C. but is used with "its normal tort meaning." Va. Code § 8.4-103, official comment 4. The official Comment to Virginia Code Section 8.4-103(5), which, as stated above, limits the damages recoverable in the absence of bad faith, states "it continues to be as necessary under subsection (5) as it has under ordinary common law principles that, before the damage rule of the subsection becomes operative, liability of the bank *and some loss to the customer or owner must be established*." Virginia Code § 8.4-103, official comment 6 (emphasis added).

It appears that the intent of the drafters of the Code was to provide for a duty of ordinary care running from a bank to its customers and to the owner of an item. Nowhere in the Code is "owner" defined. Black's Law Dictionary defines an owner as:

> The person in whom is vested the ownership, dominion, or title of property; proprietor. He who has dominion of a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases, even to spoil or destroy it, as far as the law permits, unless he be prevented by some agreement or covenant which restrains his right.

Black's Law Dictionary 996 (5th ed. 1979). The Court holds that, at the time of the allegedly negligent acts, the plaintiffs in the case at bar were the "owners" of the check mentioned in the Amended Motion for Judgment, a copy of which was included as "Exhibit A."

The foregoing analysis is further supported by Virginia Code § 8.4-103, official comment 3, which provides, in pertinent part, that:

> When it is recognized that banks handle probably 25,000,000 items every business day and that the parties interested in each item include the *owner of the item*, the drawer (if it is a check), all non-bank indorsers, the payer bank and from one to five or more collecting banks, it is obvious that it is impossible,

practically, to obtain direct agreements from all of the parties on all items. (Emphasis added.)

From the context in which the term "owner" is used, it seems clear that an owner is that individual in lawful possession of and with dominion over an item. The demurrer of the Bank to Count I of the Amended Motion for Judgment is overruled.

The allegations of Count I sound in negligence and do not, as a matter of law, charge the Bank with any actions which rise to the level of "bad faith." Accordingly, it would appear that the measure of damages should plaintiffs prevail will be limited by the provisions of Virginia Code § 8.4-103(5).

The Bank also demurs to Count II of the Amended Motion for Judgment. In Count II the plaintiffs allege that the Bank committed actual or constructive fraud when it returned the check marked "non-sufficient funds."

In order to prove either actual or constructive fraud, a plaintiff must allege, by clear, cogent, and convincing evidence, that there was a material false representation, that the plaintiff believed it to be true, that it was intended to be acted upon, that it was acted on, and that damage resulted. *Nationwide Ins. Co. v. Patterson*, 229 Va. 627, 629 (1985).

It is not the province of the court at this time to decide the sufficiency of the evidence to support the factual allegations made in the Amended Motion for Judgment. When considering a demurrer, the Court must follow the well-established principle that "the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged." *Rosillo v. Winters*, 235 Va. 268, 270 (1988).

The plaintiffs have alleged that the Bank represented that there were insufficient funds in the account, that such representation was false when made, that the misrepresentation:

caused Plaintiffs to look to FERRELL & ASSOCIATES, rather than itself [presumably, the Bank] for payment. This action, when in fact there were sums available for payment, caused

plaintiffs to be damaged. Had defendant, DOMINION BANK, N.A., not made the statement, Plaintiffs would have been paid the monies on the check.

Amended Motion for Judgment, para. 15.

In order to survive at the demurrer stage, a pleading must aver only the most minimal facts which give rise to an alleged claim. The Court holds that the plaintiffs herein have done so. Accordingly, the demurrer to Count II is overruled.